IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROY JACKSON PIERCE (TDCJ-CID # 932636) | § § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. H-06-2553 |
| A. KOSHDEL, ET AL. | § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Roy Jackson Pierce was an inmate of the Texas Department of Criminal Justice incarcerated at the Estelle Unit when the claims made the basis of this suit occurred. He has since been released from prison. In this suit, Pierce alleges that the defendants denied him medical care between August 2004 and June 2005. The defendants are Dr. Abbas Khoshdel, Dr. Bobby Vincent, Kimberly Forsti, nurse Jerry D. Walker, Dr. Powers, Jason Chavens, Warden Morgan, Warden Rich, Windy Miles, and an unknown male guard. Pierce alleges that the defendants were deliberately indifferent to his serious medical needs, conspired to deprive him of adequate medical care, and retaliated against him for filing grievances by denying him care. The defendants have moved for summary judgment. (Docket Entry No. 41). Pierce has filed a response. (Docket Entry No. 45).

Based on careful consideration of the complaint, the amended complaint, the more definite statement, the summary judgment motion, and the response, this court grants the

1

defendants' motion for summary judgment and by separate order enters final judgment dismissing the case. The reasons for this ruling are set out below.

## I. Pierce's Allegations

In his complaint and grievances, Pierce claims that he was diagnosed with nasal septal cellulitis sometime before April 2004, when he underwent corrective surgery at the University of Texas Medical Branch (UTMB). Pierce claims that he had additional surgeries for the same condition on August 19, 2004, January 31, 2005, May 16, 2005, and June 5, 2005. Pierce alleges that between August 21, 2004 and June 5, 2005, defendants Khoshdel, Powers, and Walker deliberately discontinued or reduced the medications[1] prescribed by his physicians at UTMB and refused his requests for treatment. Pierce alleges that these defendants acted intentionally to cause him pain and harm. He further alleges that defendants Morgan, Rich, Chavens, Khoshdel, and Walker conspired to deny him medical care in retaliation for grievances he filed against Khoshdel, Powers, and Walker for denying him medication and treatment. Pierce alleges that as a result of the defendants' actions, he suffered unnecessary pain, infections requiring emergency surgery, and permanent disfigurement.

## II. The Summary Judgment Standard

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Christopher Village, L.P. v. Retsinas*, 190

---

[1] Tylenol #3 for pain, antibiotics, and nasal spray.

F.3d 310, 314 (5th Cir. 1999). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, *Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521, 523 (5th Cir. 1999), *cert. denied*, 529 U.S. 1020 (2000). A movant for summary judgment makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues to support the nonmovant's case. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movant makes this showing, the nonmovant may not rest on the allegations in his pleadings. *See Isquith for and on behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988). Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324; *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). "Although we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial."

*Rushing v. Kansas City Southern Ry. Co.,* 185 F.3d 496, 505 (5th Cir. 1999), *cert denied,* 528 U.S. 1160 (2000).

### III. The Claim of Deliberate Indifference to Serious Medical Needs

The Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners. *Harris v. Hegman,* 198 F.3d 153, 159 (5th Cir. 1999); *Estelle v. Gamble,* 429 U.S. 97 (1975). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001); *McCormick v. Stadler,* 105 F.3d 1059, 1061 (5th Cir. 1999). A defendant's conduct must rise "to the level of egregious conduct." *Gobert v. Caldwell,* 463 F.3d 339, 351 (5th Cir. 2006). The United States Supreme Court has adopted "subjective recklessness as used in the criminal law" as the appropriate definition of deliberate indifference under the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825, 839-40 (1994). A prison official cannot be found liable for deliberate indifference to a prisoner's serious medical needs under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Farmer,* 511 U.S. at 837. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred from the obviousness of the substantial risk. *Id.; Reeves v. Collins,* 27 F.3d 174 (5th Cir. 1994).

A plaintiff must allege and raise a fact issue as to whether prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. *Johnson*, 759 F.2d at 1238. Medical records showing that an inmate received treatment may rebut the inmate's allegations of deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991). The "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838. If the record shows that an inmate did receive a course of treatment for his or her medical condition, it is difficult to show deliberate indifference.

The record shows that Pierce did receive a course of treatment for his medical condition. That treatment is described in the grievances and responses that are part of this record.

August 2004

In August 2004, Pierce complained that on his return to the Estelle Unit after his August 2004 surgery, the nasal spray and Tylenol # 3 provided by UTMB were not available at the Unit. Responses to his grievances stated that Pierce was given medication for pain when he returned to the Unit and that he had current prescriptions for Tylenol # 3 and saline nose spray when he returned from the hospital that could be filled at the Unit.

September 2004

Pierce complained that as of August 31, 2004, a prescription for Tylenol #3 had still not been entered on the infirmary computer and that he was only receiving two Tylenol #3 tablets per day. The grievance response stated, "Dr. Khoshdel signed the chain on 8-13-04 and 8-23-04 and the Tylenol #3 was ordered for 10 days." It also stated that Pierce was examined on August 31, 2004.

In a second grievance filed in September 2004, Pierce complained that he was seen by a nurse instead of a physician on September 6, 2004, and that he was told that he would not be prescribed narcotics. The response to the grievance stated that Pierce had a scheduled appointment on September 9, 2004. In the Step Two grievance, Pierce admitted that he was examined on September 9, 2004, but asserts that it was only because of "excruciating pain." In the response to this grievance, Pierce was informed that Tylenol #3 was prescribed only for immediate postsurgical relief. Because he was taking a tricyclic antidepressant (Nortriptyline) and had COPD, for which narcotics were strongly contraindicated, it was not safe for him to continue to take the Tylenol #3. The response further informed Pierce that "[t]his office will defer to the professional opinion of medical staff in regard to your diagnosis and subsequent care."

October 2004

In the only grievance filed in October 2004, Pierce again complained that he was not receiving Tylenol #3. He asserted that it had been prescribed by his surgical team at UTMB. Pierce was referred back to the prior grievance response stating that the Tylenol #3

prescription was only for immediate postsurgery discomfort and that he could not take it for an extended period.

November 2004

Pierce complained that Warden Morgan, Chavens, Khoshdel, and Abba had conspired to retaliate against him by denying him medical treatment because he filed a grievance against Khoshdel, Chavens, "and other medical staff." He complained that since a visit to UTMB on November 12, 2004, his prescribed nasal spray had not been available at the pill window at the Unit. The response to the grievance stated that Pierce was examined by Dr. Khoshdel on November 2, 2004 and his nasal spray and medications were renewed; that pseudoephedrine was not indicated; that his nasal spray came in but was not picked up for five days so it was sent back; and that the spray was reissued on November 23, 2004 at 9:53 p.m. The response to the grievance explained that no evidence had been found to support Pierce's complaint that he had been denied treatment or retaliated against in any way.

February 16, 2005

Pierce stated that he had nasal surgery on January 31 and returned to the Estelle Unit on February 1, 2005. He received two Tylenol #3 pills and two antibiotics on February 2, 2005. When he tried to get Tylenol #3 and antibiotics after that, he was informed at the pill window that his medications had been deleted from the computer. He also alleged that he received "only one Tylenol #3 and one antibiotic three times a day" from the pill window from February 3, 2005 through February 8, 2005. Under "Action Requested to Resolve your

Complaint," Pierce stated: "I request that I donot [sic] be forced to see any of the medical staff again."

The grievance response stated that Pierce submitted a sick call request on February 6, 2005; that he was scheduled for an appointment on February 7, 2005; and that Tylenol #3 had been ordered for seven days and again on February 15, 2005 for five days. The response further stated that Pierce had received his medications as ordered and that he must submit a sick call request if he needed medical attention. The grievance stated that Pierce had a right to refuse medical care and/or treatment, and that the medical department had the right to accept, reject, or modify recommendations from specialists.

In grievances filed after June 2005, the last month that Pierce allegedly received inadequate medical care, he continued to complain about his medication, the fact that the Unit physicians would not prescribe the same medication as his UTMB surgeons had, and his desire to see other Unit physicians. In the grievance responses, Pierce was told that he could not choose his medical provider; that he had missed medical appointments and that continuing to do so placed his health at risk; that he was prescribed Indocin for pain and saline nasal spray; that Naprosyn was discontinued as a pain medication because Pierce had Hepatitis C and it would harm his liver; and that he could not dictate his medical care.

In their summary judgment motion, the defendants provided the affidavits of Susan Morris, M.D. and Barbara Stevens, R.N. (Docket Entry No. 41, Exhibits A and B). Dr. Morris is a physician with the UTMB-Correctional Managed Care Division. She reviewed

Pierce's medical records from January 14, 2005 through November 16, 2007. Nurse Barbara Stevens is currently employed as a Project Manager but had previously held the Facility Nurse Manager position for the UTMB-Correctional Managed Care unit for six years.

Dr. Morris explained that her review of the records showed that Pierce had a nasal septoplasty in January 2005 to correct unresolved complications of a prior septoplasty in October 2004. (Exhibit A, p. 2). Nurse Stevens noted that although Pierce had been placed on Levofloxacin and Clindamycin when he was discharged from the hospital after surgery, he was not compliant in taking his medications. (Exhibit B, p. 2). Pierce missed 7 of 10 prescribed doses of Levofloxacin and 5 of 30 doses of Clindamycin. (Exhibit B, p.2).

Dr. Morris and Nurse Stevens both concluded that Pierce's medical records showed a refusal to comply with medical instructions and persistent efforts to try to get narcotics from the medical personnel at the Unit, long after there was any medical need. Dr. Morris stated: "Throughout [the Plaintiff's] record, it becomes apparent that Mr. Pierce's chief concern was obtaining more narcotic analgesic despite his clinical need. He attempted to manipulate his clinical course to justify his request for additional narcotic analgesic as evidenced by his report of mysterious injuries to his surgical site . . . later documented to be self-induced. . . ." (Exhibit A, p.4). Both Dr. Morris and Nurse Stevens testified that a reasonable medical provider under the same or similar circumstances would believe that the care provided Pierce was timely, appropriate, and consistent with the Constitution and laws of the State of Texas.

(Exhibit A, p 4 and Exhibit B, p.4). In response, Pierce accuses Dr. Morris and Nurse Stevens of perjury.

The undisputed facts in the record show that Pierce's medical condition was monitored by physicians at the Estelle Unit and that he received timely and appropriate medication and care for his condition. There is no evidence to support a claim that any defendant intentionally ignored his complaints, refused him care, or mistreated him in a deliberate attempt to cause him harm or pain. Pierce neither alleged nor submitted evidence of any inadvertent or negligent failure to provide him medical care or negligent diagnosis. The law is clear that negligence or malpractice on the part of a physician or other prison official is insufficient to support a denial of medical care claim under the Eighth Amendment. *See Wilson v. Seiter,* 501 U.S. 294, 297 (1991). A disagreement between an inmate and a prison physician about the appropriateness of certain medical care does not raise a fact issue as to an unconstitutional denial of medical care. *Banuelos v. McFarland,* 41 F.3d 232, 235 (5th Cir. 1995). Merely alleging that a physician should have taken additional diagnostic steps or used alternative treatment does not support a claim. *Varnado v. Collins,* 920 F.2d 320, 321 (5th Cir. 1991). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional right. *Youngberg v. Romeo,* 457 U.S. 307, 322-23 (1982). When, as here, the medical records document assessment and treatment of a prisoner's medical complaints, there is no deliberate indifference. *See McCord v. Maggio,* 910 F.2d 1248, 1251 (5th Cir. 1990).

The defendants' motion for summary judgment dismissing Pierce's claim of deliberate indifference is granted.

### IV.     The Retaliation Claim

Pierce alleged in his complaint and grievances that he was denied adequate medical care by defendants Warden Morgan, Rich, Chavens, and Khoshdel in retaliation for grievances he filed complaining of denial of medical care. To state a valid claim for retaliation under section 1983, a prisoner must allege: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). The inmate must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997). He must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). Conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). The inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id.*

In Pierce's grievances, he repeatedly alleged that he was denied medications at the Estelle Unit that were prescribed for him after his surgery at UTMB. Pierce interpreted the denial of these medications as a denial of medical care that his UTMB physicians prescribed. The grievance responses showed his belief to be unfounded. The UTMB physicians did not

prescribe narcotic painkillers or other medication indefinitely. The defendants' responses to the grievances and the summary judgment record shows that Pierce was provided medication and treatment for his medical condition on a frequent basis. His complaints of pain were responded to. Pierce was not treated by the physicians of his choice and was not given the narcotics he wanted, but the reasons were explained to him. During the ten months in which Pierce filed repeated grievances, prison officials responded to the grievances and explained what medications were prescribed for him and why. He was also reminded of the dates on which he was seen or examined by medical personnel. Pierce was dissatisfied with the grievance responses and continually interpreted them as denials of medical care. There is simply no evidence in the record to support Pierce's claim that he was denied medical care. Nor does the evidence present any basis to conclude that his medical treatment was in any way the result of retaliation. The defendants' motion for summary judgment on the retaliation claim is granted.

## V.     The Conspiracy Claim

Pierce contends that defendants Morgan, Rich, Chavens, and Khoshdel conspired to deny him adequate medical care. A conspiracy claim cannot survive summary judgment based solely on conclusory allegations. *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986). Pierce presents nothing more than conclusory allegations to support his claim of conspiracy. These are insufficient to survive a motion for summary judgment. And because his underlying claims for deprivation of a constitutional right failed, there is no underlying action

to which a conspiracy could have been directed. *See, e.g., Wong v. Stripling*, 881 F.2d 200 (5th Cir. 1989).

### III.  Conclusion

The defendants' motion for summary judgment is granted. This case is dismissed, with prejudice. Any remaining pending motions are denied as moot.

**SIGNED** on March 4, 2009, at Houston, Texas.

_____
LEE H. ROSENTHAL
UNITED STATES DISTRICT JUDGE